**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ANTONY VON DER MUHLL KOSTALAS,** | **Civil Action No. 15-3394 (JLL) (JAD)** |
| **Plaintiff,** |  |
| **v.** | **OPINION** |
| **PENNY PRITZKER** *et al.*, |  |
| **Defendants.** |  |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Plaintiff Antony Von Der Muhll Kostalas's ("Plaintiff") Motion to Amend the Complaint pursuant to Federal Rule of Civil Procedure 15 (the "Motion to Amend"). (ECF No. 28). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Plaintiff's application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiff's Motion to Amend, (ECF No. 28), is **GRANTED**.

### I.    BACKGROUND

Plaintiff, an individual who suffers from both physical and psychiatric disabilities, began working for the United States Department of Commerce (the "Agency") in 1980 and served as an International Trade Specialist beginning in 2003. (Kostalas Aff., Ex. 2, ECF No. 27-2, ¶ 2). Plaintiff's injuries stem from two automobile accidents that he was in on December 16, 2008 and March 2, 2010. (Id.). On February 21, 2011, Plaintiff submitted "a request for reasonable accommodations, supported by a medical assessment from his treating psychiatrist[.]" (Prop. Am. Compl., ECF No. 27-1, ¶ 24). The request to the Agency included:

> 100% more time to complete work related tasks in the event of unforeseen flare-ups or onset of debilitating symptoms of the disorder; the ability to telework at least two days per week, and up to two additional days and the option of late arrival and early departure in the case of unforeseen flare-ups or onset of symptoms; reduction of driving time due to drowsiness from medications; reduction of stress in the work environment by clear communication of deadlines and expectations, taking symptoms into account when setting the work load and the tone of the work environment; and sensitivity to feedback when Plaintiff is experiencing excessive symptoms or stress.

(Id. ¶ 26). The Agency issued an accommodation decision on March 28, 2011 denying Plaintiff's request for "100% more time to complete work related tasks", but removed duties that Plaintiff argues were "non-essential". (Id. ¶¶ 26, 28-30). The Agency also granted Plaintiff's request to "telework from home at least two days per week", yet Plaintiff alleges that it was "conditioned upon a litany of onerous requirements that essentially rendered the accommodation meaningless." (Id. ¶¶ 26, 31).

The Agency placed Plaintiff on a Performance Improvement Plan on May 12, 2011 ("PIP"), which outlined specific requirements Plaintiff was to perform. (Kostalas Aff., Ex. 2, ECF No. 27-2, ¶ 4; Prop. Am. Compl., ECF No. 27-1, ¶ 42). On May 18, 2011, Plaintiff initiated the Equal Employment Opportunity ("EEO") process with the Agency alleging discrimination on the basis of his disability. (Prop. Am. Compl., ECF No. 27-1, ¶ 40). On November 21, 2011, a "proposal to remove Plaintiff [from] his employment based on his failure to successfully complete the PIP" was issued. (Id. ¶ 44). Plaintiff was ultimately removed from his position on February 21, 2012. (Id. ¶ 50).

On June 7, 2012, the Office of Civil Rights informed Plaintiff of his right to file a formal employment discrimination complaint, which he did on June 26, 2012. On February 21, 2013, the Office of Civil Rights issued a decision dismissing Plaintiff's complaint because its basis was the

same as the Merit Systems Protection Board's appeal.  Plaintiff retained Jonathan Bell, Esq., in January of 2013 to challenge his termination and pursue his disability discrimination claims against the Agency. (Kostalas Aff., Ex. 2, ECF No. 27-2, ¶ 6).  Plaintiff understood his arrangement with Mr. Bell "to mean that Jonathan Bell would represent [him] before the Merit Systems Protection Board and pursue [Plaintiff's] claims through federal court."  (Id.).  Mr. Bell filed an appeal with the Merit Systems Protection Board on February 19, 2013.  The Merit Systems Protection Board issued an initial decision on January 13, 2014 and a final order ruling against Plaintiff on February 17, 2014.

On March 18, 2014, Mr. Bell filed a notice of appeal of the Merit Systems Protection Board's final order with the EEOC Office of Federal Operations ("OFO").  (Compl., ECF No. 2, at 3).  On February 4, 2015, the OFO issued an order consistent with the MSPB's finding that Plaintiff was not discriminated against. (Compl., ECF No. 2, at 6).  The OFO decision informed Plaintiff of the following: "[y]ou have the right to file a civil action in an appropriate United States District Court, based on the decision of the Merit Systems Protection Board, within thirty (30) calendar days of the date that you receive this decision."  (Id. at 18).  The decision further states, "[f]or timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed."  (Id. at 20).  Defendant argues that Plaintiff "thus presumptively received the OFO Decision on February 9, 2015" and was required to file his Complaint on or before March 11, 2015.  (Def. Opp. Br., ECF No. 32, at 5).

Plaintiff maintains that he received a copy of the decision on February 10, 2015 and "[t]he Certificate of Mailing indicate[d] that [Plaintiff's] attorney also received a copy".  (Kostalas Aff., Ex. 2, ECF No. 27-2, ¶ 8).  Plaintiff became aware that his attorney had not received a copy of the decision, likely due to a change in office location, and thereafter forwarded Mr. Bell a copy of the

3

decision via facsimile on February 17, 2015.  (Id. ¶ 9; Bell Aff., Ex. 3, ECF No. 27-3).  Plaintiff

"assumed that [Mr. Bell] would take the necessary steps to file [his] case in federal court[.]"

(Kostalas Aff., Ex. 2, ECF No. 27-2, ¶ 10).  Mr. Bell informed Plaintiff on March 17, 2015 that he

would not pursue Plaintiff's claims in federal court, but advised Plaintiff of the following:

> We have 30 days upon receipt of the decision to file a civil action.
> The fax to me was February 16, 2015.  That leaves two days for you
> to go to Federal Court and file pro se.  You should do this to preserve
> your right to file if you are contemplating.  DO NOT LET THESE
> TWO DAYS LAPSE.  The general rule is that if you are represented,
> the 30 days widow starts when your attorney receives the decision.
> Bring the Complaint with you to Federal Court, show them the
> decision and ask them how to file a Federal Complaint.  TELL THE
> [sic] YOU ARE PRO SE AND THEY WILL GUIDE YOU.  YOU
> NEED TO DO THIS TODAY OR TOMORROW.  I have the fax
> confirmation that it was sent on 2/16, so you should be fine.

(Id.).[1]

Plaintiff, initially proceeding pro se, initiated this matter on March 18, 2016 in the United

States District Court for the Southern District of New York against Defendants Penny Pritzker,

Secretary of the United States Department of Commerce, and John D. Kerry, Secretary of the

United States Department of State, (collectively "Defendants").  Plaintiff alleges that Defendants

discriminated against him based on his disability status and his age pursuant to the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"), and the Age Discrimination in

Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA").  (Compl., ECF No. 2).  Plaintiff

further alleges that Defendants violated the New York State Human Rights Law, N.Y. Exec. Law

§ 290 et seq., and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 et

---

[1] Although Mr. Bell's email to Plaintiff states that he received the fax on February 16, 2015, Mr.
Bell affirmed that the fax was in fact received on February 17, 2015.  (Bell Aff., Ex. 3, ECF No.
27-3, at 2).

*seq.* The Southern District of New York transferred the case to this Court pursuant to 28 U.S.C. § 1404(a).

On October 29, 2015, Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (ECF No. 16). Defendants argue that Plaintiff "failed to timely file the Federal complaint and failed to exhaust his administrative remedies on his ADEA claim." (Def. Br., ECF No. 16-1, at 1). Defendants further argue that this Court lacks subject matter jurisdiction over Plaintiff's state and city law claims. (Id.).

Plaintiff retained counsel who filed a Notice of Appearance on December 14, 2015. (ECF No. 21). Plaintiff filed an opposition to Defendants' Motion to Dismiss, (ECF No. 26), and a cross Motion to Amend the Complaint on February 26, 2016. (ECF No. 28). Plaintiff argues, first, that his time to file the Complaint should be equitably tolled. (Pl. Br., ECF No. 28-1, at 5-9). Plaintiff also argues that should this Court apply the doctrine of equable tolling, Plaintiff should be permitted to amend his Complaint. (Id. at 9-10). "As it relates to Defendant's motion, the proposed amended complaint includes factual allegations establishing the plausibility of Plaintiff's claims of disability discrimination and retaliation. The amended complaint also limits the issues to be adjudicated to claims under the Rehabilitation Act of 1973 against Defendant Pritzker." (Id.).

On February 29, 2016, the Honorable Jose L. Linares, U.S.D.J., denied Defendants' Motion to Dismiss as moot, without prejudice, with right to refile pending the adjudication of Plaintiff's Motion to Amend. (ECF No. 29). Defendants opposed Plaintiff's Motion to Amend on futility grounds. Specifically, Defendants argue that Plaintiff's Motion to Amend should be denied because Plaintiff failed to timely file his Complaint and the doctrine of equitable tolling does not apply given the lack of "extraordinary circumstances". (Def. Opp. Br., ECF No. 32, at 12-17).

5

## II.   STANDARD OF REVIEW

### a.  Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); see also Wright & Miller section 1484, at 676 ("Subdivision (a)(2) encourages the court to look favorably on requests to amend."). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); see also Sabatino v. Union Township, No., 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits.").

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al, 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. Grayson v. Mayview State Hosp., 292 F.3d 103, 108 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

6

Here, Defendants challenge Plaintiff's proposed amendments on "futility" grounds. A proposed amendment "'is futile if the amended complaint would not survive a motion to dismiss.'" County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11–7119(WJM), 2014 U.S. Dist. LEXIS 46572, *9–10 (D.N.J. Apr. 4, 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Court notes that Defendants bear the burden of establishing that Plaintiff's proposed amendments are futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F.Supp.2d 761, 764 (D.N.J.2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" Schiano v. MBNA, 05–1771(JLL), 2013 U.S. Dist. LEXIS 81440, *45 (D.N.J. Feb. 11, 2013) (internal citations omitted).

### b.  Equitable Tolling

The doctrine of equitable tolling "functions to stop the statute of limitations from running where the claim's accrual date has already passed." Oshiver v. Levin, Fishbein, Sedran & Berman,

38 F.3d 1380, 1387 (3d Cir. 1994). The Third Circuit has instructed that there are three principal, though not exclusive, situations in which equitable tolling may be available: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) (citations omitted). A plaintiff will not, however, "receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim. The principles of equitable tolling thus do not extend to 'garden-variety claims of excusable neglect.' The remedy of equitable tolling is extraordinary, and we extend it 'only sparingly.'" Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

## III.   DISCUSSION

As noted above, Plaintiff's proposed Amended Complaint adds facts, withdraws all claims against Defendant Kerry, and removes all claims under New York State and New York City Human Rights Laws and the ADEA. (Prop. Am. Compl., ECF No. 27-1). Plaintiff argues that the remaining claims "alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.* on the basis of his disabilities and ensuing retaliation, are properly before this Court." (Prop. Am. Compl., ECF No. 27-1, ¶ 4). Plaintiff's pro se Complaint filed in the Southern District of New York was a standard form for employment discrimination. (Compl., ECF No. 2). The form limited Plaintiff's claim to five (5) causes of actions: 1) Title VII of the Civil Rights Act of 1964, 2) Age Discrimination in Employment Act of 1967, 3) Americans with Disabilities Act of 1990, 4) New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297, and 5) New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131. (Id. at 1). Further, Plaintiff's

8

proposed Amended Complaint notes that "[a]lthough Plaintiff's pro se complaint form has a check adjacent to the Americans with Disabilities Act of 1990, 42 U.S.C. §§12112-12117, Plaintiff's disability discrimination claims are brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*, which is the exclusive means by which a federal employee may raise a claim of disability discrimination." (Prop. Am. Compl., ECF No. 27-1, at 1, n.1).

This Court must, therefore, determine whether allowing Plaintiff to amend his Complaint to pursue an action under the Rehabilitation Act would be futile. Both parties are in agreement that Plaintiff had thirty (30) days from receipt of the EEOC's final decision to file a complaint in federal court. Plaintiff concedes that his Complaint was not timely filed and maintains that the issue before the Court is whether the thirty (30) day statute of limitations should be equitably tolled. (Pl. Br., ECF No. 28-1, at 5).

In support of his motion, Plaintiff relies on Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236 (3d Cir. 1999). There, the Third Circuit applied equitable tolling given the attorney misconduct that occurred. While the Court noted that "[t]he law is clear that courts must be sparing in their use of equitable tolling", there are "narrow circumstances in which the misbehavior of an attorney may merit such equitable relief." Id. at 239. In that case, the plaintiff filed a complaint with the EEOC alleging age and gender discrimination. Id. at 238. After the EEOC found sufficient evidence to support a gender discrimination claim, the plaintiff hired an attorney. "[A]fter attempts at reconciliation between [plaintiff] and [her former employer] failed, the EEOC declined to transfer [plaintiff's] case to its Legal Unit and, in a letter dated May 30, 1995, notified [plaintiff] of its intention to issue to her, under separate cover, a right-to-sue letter. The letter also stated that she could file a lawsuit within ninety days of receiving the right-to-sue letter." Id.

The EEOC issued the right-to-sue letter on June 15, 1995 and on July 2, 1995, plaintiff's attorney wrote to her and advised her that he was in the process of drafting the complaint. Plaintiff called her attorney in early September to confirm that her complaint had been filed on time and her counsel assured her that he had done so, when in fact he had not. Plaintiff's complaint was filed on September 19, 1995, which was after the expiration of the ninety-day statute of limitations. Plaintiff had repeatedly requested a copy of the complaint and frequently inquired about the status of her case. It was not until months later that the plaintiff discovered that her attorney had been suspended from the practice of law in October of 1995 and her complaint had been dismissed. The Third Circuit found that the plaintiff's attorney's "level of misbehavior went well beyond the garden variety" claim of excusable neglect because plaintiff's attorney "affirmatively lied to his client." Id. at 241. The Court noted "that the mere fact that counsel failed to file the complaint in a timely manner probably constitutes garden variety neglect. But his affirmative misrepresentations to his client about the very filing at issue here rise above that standard." Id.

Here, Plaintiff argues that the present case is analogous to Seitzinger and "Plaintiff and Mr. Bell establish the three elements articulated by the Court in Seitzinger. Plaintiff was diligent in pursuing his claims, Mr. Bell misled Plaintiff, and there is no evidence that Defendants would be prejudiced by the application of equitable tolling." (Pl. Br., ECF No. 28-1, at 7). Defendants opposed arguing that there was no affirmative misrepresentation here. (Defs. Opp. Br., ECF No. 32, at 14). Specifically, "Plaintiff does not allege that Mr. Bell lied to him about filing a complaint. Instead, Plaintiff's allegations are limited to what Plaintiff 'understood' or 'assumed' that Mr. Bell would do. There is no allegation that Mr. Bell ever said that he would or did file the federal complaint." (Id.) (citing Kostalas Aff., Ex. 2, ECF No. 27-2, ¶¶ 6-7, 9-10).

Plaintiff replied arguing that "Mr. Bell misled Plaintiff (by abandoning his claims and then misreading [sic] him to believe that he still had time to file a complaint *pro se* when in fact the time period had elapsed)." (Pl. Rep. Br., ECF No. 36, at 7).

> Mr. Bell's misrepresentation and misconduct were not solely limited to his statement that Plaintiff still had time to file the federal complaint, when in fact the 30-day period had already elapsed, but in his abandonment of Plaintiff's claims and subsequent misrepresentation that the filing period had not yet expired. The retainer agreement between the parties and communications between Mr. Bell and Plaintiff until March 17, 2015 left no room for ambiguity with regard to the scope of Mr. Bell's representation of Plaintiff. This is not a situation of what Plaintiff "understood" or "assumed" his attorney would do; it is a case of what his attorney was contractually and ethically obligated to do, namely file a "legal action" against Plaintiff's employer; his failure to do so; and then his affirmative step of advising Plaintiff—after the time had elapsed-- that he would not file the complaint and that Plaintiff still had time to do so.

(Id. at 8).

This Court agrees with Plaintiff and finds that there is a sufficient misrepresentation here. The facts in the present case are similar to the facts in Seitzinger based on the plaintiffs' actions and the attorneys' actions. Turning first to the plaintiffs, the Third Circuit in Seitzinger found that the plaintiff was "extremely diligent in pursuing her claim." Seitzinger, 165 F.3d at 241 (citing Irwin, 498 U.S. at 96). There, the plaintiff "hired an attorney to help her file her civil complaint. She contacted him before the filing deadline, which she knew about in broad terms, to ensure that he had filed the complaint. In addition, she repeatedly called him, requesting a copy of the complaint and seeking information on how her case was progressing." Seitzinger, 165 F.3d at 241. Additionally, the Third Circuit noted the following:

> [S]he continued to be diligent after she learned that her attorney had effectively abandoned her. She picked up her files from him and contacted the District Court to check on the status of her case. She consulted with ten to fifteen attorneys, trying to determine whether

11

> there was a way to get her case reinstated by the Court. Finally, she
> moved (successfully) for the District Court to vacate the dismissal
> of her case.

Id. at n.2.

In the present case, as noted above, the OFO decision informed Plaintiff of the following: "[y]ou have the right to file a civil action in an appropriate United States District Court, based on the decision of the Merit Systems Protection Board, within thirty (30) calendar days of the date that you receive this decision." (Compl., ECF No. 2, at 18). Plaintiff's Complaint should have been filed on or before March 11, 2015, and Plaintiff had retained an attorney to pursue those claims for him and was diligent in those efforts. On February 11, 2015, one month before the statute of limitations ran, Plaintiff emailed his attorney has stated, "I think it's time to move the case to court[.]" (Kostalas Aff., Ex. 2, ECF No. 27-2, ¶ 9). Plaintiff then faxed his attorney a copy of the OFO decision on February 17, 2015, still well before the statute of limitations period expired. It is entirely reasonable that Plaintiff would presume his attorney would timely file his Complaint, since that is why he retained him. Plaintiff diligently pursued his case, as the plaintiff in Seitzinger did, which warrants equitable tolling.

Turning next to the attorneys' actions, while Mr. Bell may not have "affirmatively lied" to his client, as the plaintiff's attorney in Seitzinger did, see Seitzinger, 165 F.3d at 241, his conduct, nevertheless, lends itself to relief for Plaintiff. Mr. Bell incorrectly advised the Plaintiff that he had thirty (30) days from when Mr. Bell received the final decision to file a complaint. While "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling", Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001), Mr. Bell did not inform the Plaintiff that he would not file his Complaint until after the deadline had already passed. Plaintiff, in his diligence, filed his Complaint the day after his attorney informed him he would not further pursue Plaintiff's claims.

12

Mr. Bell was privy to the same information that Plaintiff was and had been retained to specifically guide Plaintiff through the entire process. While not rising to the level of an "affirmative" misrepresentation, his failure to inform the Plaintiff that he would not file his Complaint until after the statute of limitations had run, and then inform him that he had two days left to file his Complaint, was in itself a misrepresentation. Plaintiff's diligence in: (1) contacting his attorney with the merit Board's final decision; (2) immediately filing his Complaint the day after his attorney abandoned him; and (3) the filing of his Complaint just seven (7) days after an already short thirty (30) day limitations period, should not be punished by an overly strict reading of the Third Circuit's holding in Seitzinger and the doctrine of equitable tolling. While Defendants note that the United States Supreme Court has cautioned that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants", Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984), this Court concludes that a stricter reading of the doctrine of equitable tolling, in this instance, would render the doctrine completely inequitable. The Court finds that the extraordinary circumstances necessary to apply equitable tolling do exist here in light of the attorney's abandonment. Plaintiff's proposed Amended Complaint is not, therefore, futile.

### IV.    CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Leave to File an Amended Complaint, (ECF No. 28), is **GRANTED**. An appropriate form of Order accompanies this Opinion.

**JOSEPH A. DICKSON, U.S.M.J.**

cc:    Hon. Jose L. Linares, U.S.D.J.

13